LEMMON, Judge.
In this appeal the State of Louisiana, Department of Highways questions, as excessive, the amount of just compensation awarded for the expropriation of defendant’s property.
The tract of land involved in this litigation was generally rectangular in shape and measured 744 feet on Ames Boulevard, with varying depth on an east-west line up to about 1,950 feet. The proposed route for Interstate Highway 410 in the area also ran east-west and included most of the south half of defendant’s tract. Because an elevated interchange with Ames Boulevard was also proposed across the property, the Department additionally expropriated all of defendant’s existing frontage on that north-south thoroughfare.
The subdivision is shown on the following excerpt from an exhibit with the required right of way indicated by heavy lines:

*48

*49 Prior to the taking by expropriation, most of the tract had been subdivided into Bayou Estates Extension. The portion fronting on Ames, to a depth of 311 feet, was left undivided for potential commercial use, although the entire property was zoned for residential use. The remaining property in the rear was divided into 173 lots for residential use.
Defendant had developed the north part of the subdivision and had sold or constructed houses on the 55 lots shaded on the above exhibit. Because parish approval for the development of the remaining 118 lots (including the 25 undeveloped lots not included in the expropriation) and rezoning of the commercial area had been withheld on account of the impending highway project, defendant requested an “advance taking” as a hardship case. The Department then approved the acquisition of the right of way across the particular property as an “advance taking”, but no other property in the area was acquired at the time.
The date of the taking was April 19,1973. The case was tried on several non-consecutive days and was concluded in April, 1975, at which time construction of the project had still not been approved and a suit had been filed to enjoin construction. The trial court found the value of the part taken was $259,006 and the severance damage to the remainder was $47,782.
COMPENSATION FOR PART TAKEN

Value Before the Taking

All three expert appraisers divided the entire property for appraisal purposes into two sections, residential and potential commercial, on the basis of highest and best use.[1] As to the residential section containing 118 undeveloped lots, all experts also agreed that the most appropriate approach to value was the developed subdivision analysis, in which the appraiser estimates the selling price of developed lots in bulk sales and deducts the costs of development and sale. Using this approach, they essentially estimated the value on a per lot basis, alternatively calculated on an acreage basis. As to the commercial section containing 233,-994 square feet, the appraisers used comparable sales and estimated the value of the subject property on a square footage basis.
Recapitulation of the three appraisals was: [2]
Before value:
I II III
Residential $173,562 $205,975 $202,813
Commercial 210,391 152,096 175,500
Total $384,153 $358,071 $378,313
Applying the same unit values to the amount of property taken by expropriation, the appraisers estimated the value of the part taken as follows:
Value of part taken:
I II III
Residential $136,515-00 $148,830.00 $146,579.00
Commercial 126,763-00 91,554.00 105,639.00
Total $263,278.00 $240,384.00 $252,218.00

*50
Award for Value of Part Taken ($259,006.00)

There was little difference between the appraisers as to the total amounts estimated for the value of the part taken, although the recapitulations showed significant differences in the figures used to reach those totals.
The Department’s appraisers’ approach in valuing the residential property was more consistent and persuasive, but their valuations were higher than that of defendant’s expert. On the other hand, defendant’s expert’s valuation of the commercial property, although perhaps slightly high, was based on more persuasive comparables which required less adjustments, and the trial judge’s apparent acceptance of a figure closer to his value of $0.90 per square foot, over the $0.65 and $0.73 value estimated by the Department’s appraisers, was supported by the record.
A trial court’s finding of property value is a finding of fact to which great weight should be accorded on appellate review. State, Dept. of Highways v. Ragusa, 234 La. 51, 99 So.2d 20 (1958). The record supports the finding in this case.[3]
SEVERANCE DAMAGE

Value After the Taking

The Appraisers estimated the value of the property remaining after the taking as follows:
I II III
Residential $ 8,300 $ 9,500 $ 8,025
Commercial 69,856 186,283 198,400
Total $ 78,156 $195,783 $206,425
This recapitulation illustrates that the main point of controversy in the evidence was the estimated value of the commercial property remaining after the taking. The importance of this point is further demonstrated in the following calculations of severance damages:[4]
Total before valúe $384,153 $358,071 $378,313
Total after value -78,156 -195,783 -206,425
Total value of part taken plus severance damage $305,997 $162,288 $171,888
Less value of part taken -263,278 -240,384 -252,218
Severance damage $ 42,719 -0--0-

*51
Award of Severance Damage ($47,782)

The severance damage at issue in this case is that damage to the remaining part resulting from the partial expropriation of the tract. R.S. 48:453 (before the amendment inapplicable to this case) required that damages to the remainder of the property be determined as of the date of trial.
The Department’s appraisers admitted that the residential section sustained severance damages in the range of $47,645 to $48,209. However, they opined that the tract, taken as a whole, sustained no severance damage, inasmuch as the value of the commercial section was considerably enhanced by the taking for the proposed highway project. On the other hand, defendant argues that the Department is actually seeking a setoff for special benefits, the value of which the Department has the burden to prove, and that the proof does not support a finding of special benefits.[5]
Enhancement in value accruing to the remainder of a tract, as a consequence of the public purpose for which part of the tract was expropriated, is generally viewed as a benefit for which the expropriating authority may, according to the circumstances, be entitled to a setoff against severance damages. Nevertheless, even under the approach the Department urges in this case, the ultimate determinative question is whether the value of the commercial section was actually higher after the taking and particularly at the time of trial.
Defendant’s appraiser opined the irregularly shaped commercial remainder had a lesser square foot value after the taking, noting that upon construction of the interchange the majority of the remaining frontage would not have access to Ames Boulevard (because control of access would be imposed over all but the first 188 feet of the frontage for the ground level on-ramp) and that the presence of the overhead structure would also reduce value. While he admitted that the expected increase in traffic would make the property more attractive for commercial use, he concluded there were no special benefits at present from the taking principally because of the uncertainty surrounding construction of the project and reports of abandonment.
The Department’s experts based their opinion as to the substantially higher value after the taking on the fact that the frontage (although limited) would be the first point of access at the on-ramp of the interstate highway. They offered comparable sales to support this opinion, but most of the sales occurred before the taking, and all required a number of substantial adjustments because of gross dissimilarities in location and size. The experts also admitted that if a holding period of more than three or four years was reasonably expected, a greater downward adjustment should be applied. They knew of no commercial sales on Ames Boulevard since the date of the taking.
We agree that the value of the commercial property will increase substantially if the access route to an interstate highway is constructed across the property. One must also acknowledge that reasonable anticipation of such construction does have an effect on present market value, and to that extent enhancement in value may accrue when construction of the project is reasonably assured even though no actual construction has begun. However, the Department’s position in this regard was weakened in this case because the expropriation was an “advance taking”, the construction of the project had not been approved by time of trial, and an injunction suit was pending. Probably for those reasons, the market at the time of trial had not yet reflected any substantial effect of the anticipated project.[6]
*52 The trial judge rejected the claim for special benefits as “speculative, conjectural and uncertain as of the date of trial”. Under the rather unusual circumstances of this case, as shown by this record, we concur in that characterization.[7] See State, Dept. of Highways v. McPherson, 261 La. 116, 259 So.2d 33 (1972).

Expert Fees

The trial court awarded expert fees of $1,500 for trial preparation and $150 for each of two court appearances.
The expert testified only that defendant’s representative agreed to a fee of $2,500 for the appraisal and $150 a day for court appearance. The amount a party agrees to pay an expert, however, is not the determinative criteria for awarding expert fees.
The expert testimony obviously required some preparation, but there was no evidence as to the amount or value of the efforts expended in preparing the appraisal. We therefore reduce the expert fee for trial preparation from $1,500 to $300 considering this a minimum award for the apparent efforts in the absence of additional supportive evidence.
Accordingly, the judgment of the trial court is amended to reduce the total expert fee from $1,800 to $600. As amended, the judgment is affirmed.

AMENDED AND AFFIRMED.

. The expert presented by defendant testified on two separate days. Although on the first day he opined the highest and best use of the entire property was residential, on reappraisal he concurred in the opinion of potential commercial as the highest and best use of the Ames frontage.
All experts finally agreed as to the reasonable probability of achieving a zoning change without difficulty.

. In these recapitulations the values estimated by defendant’s appraiser are shown first, and those of the other two appraisals are listed consistently in the same order.

. We acknowledge, but reject, the Department’s argument that the trial court erred as a matter of law in awarding $259,006, which was the amount deposited at the filing of the suit, since the original certificate of just compensation was subsequently amended to $252,218. The record supports the award that was made, and an award based on the conclusion that the original estimate of value was correct does not constitute error, especially since the reason for changing the original estimate was not explained.

. The Department’s appraisers actually calculated severance damage by determining the indicated remaining value (value of entire property before taking minus value of part taken) and comparing that to their estimated value of the remainder.

. Indeed, one of the Department’s experts admitted he used the special benefits offset in determining there was no overall severance damage.

. While one of the appraisers opined that an investor “could not get that hurt at $2.13 a square foot today if the project was never built”, he admitted at another point that “the values in the area for commercial property are probably approaching at (sic) least $1.00 a foot now”.

. One expert testified that he had never heard of an interstate project being abandoned.
Perhaps measurement of damages at time of trial often provides the Department a better opportunity to prove special benefits, because value increases have usually been demonstrated by time of trial. In this case, however, that provision of R.S. 48:453 worked to the Department’s detriment.