884 So.2d 615 (2004)
Patricia Thompson NOEL
v.
Rickey Martin NOEL, Sr.
No. 2004-CA-0105.
Court of Appeal of Louisiana, Fourth Circuit.
September 8, 2004.
*616 Theon A. Wilson, New Orleans, LA, for Plaintiff/Appellant.
Raul E. Guerra, Jr., Stephen R. Rue & Associates, L.L.C., Kenner, LA, for Defendant/Appellee.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge MICHAEL E. KIRBY and Judge MAX N. TOBIAS JR.).
JOAN BERNARD ARMSTRONG, Chief Judge.
The plaintiff, Patricia Thompson Noel (hereinafter "Patricia"), divorced wife of the defendant, Rickey Martin Noel, Sr. (hereinafter "Rickey"), appeals from the judgment of the trial court holding that Rickey's interest in the Noel Family Partnership is his separate property and does not form a part of the community of acquets *617 and gains formerly existing between the couple and arising out of their seven-year marriage. The remaining community assets were apportioned by joint stipulation of the parties. We affirm.
The parties stipulated that the Noel Family Partnership ("NFP") was created in 1992; that Rickey is a member of NFP; that Rickey's mother, Ida Noel (hereinafter "Mrs. Noel, Sr.") did not execute a written Act of Donation of an NFP interest to Rickey; that Mrs. Noel, Sr. did not file a gift tax return for the taxable year 1992; that the petition for divorce was filed on April 6, 1998, terminating the community property regime between Patricia and Rickey; that the amount due to Rickey as his partnership share in NFP for the period 1998 through 2011 is $614,250, pre-tax; and that the reports of Patricia's[1] and Rickey's Certified Public Accountants would be accepted by affidavit. NFP stipulated that it would not distribute the proceeds for the year 2003 that are due to Mr. Noel as a member of NFP but will hold those funds in escrow pending resolution of this litigation.
Notary Public Kristen Shapiro testified that she met Ida and John Noel, Sr. (hereinafter, "Mr. Noel, Sr.") in the summer of 1992. The senior Noels told Ms. Shapiro that they had purchased a winning lottery ticket and asked Ms. Shapiro to draft a partnership agreement to deal with their $7,000,000 lottery winnings. Ms. Shapiro advised them to consult a Certified Public Accountant. Without objection from any of the parties, the trial judge asked for clarification from Ms. Shapiro:
THE COURT:
Was it clear to you that when Mrs. Ida had come to see you that she had won the ticket?
THE WITNESS:
Yes.
THE COURT:
Did she win the ticket with her husband?
THE WITNESS:
Yes. She and her husband.
THE COURT:
They were the ones who purchased the ticket?
THE WITNESS:
Correct. In fact, she said her husband would go down and buy lottery tickets periodically and this one was a winner.
Patricia testified that between 1992 and the termination of their community in 1998, she and Rickey received proceeds from the lottery winnings with which they paid their house note, paid for their children's private schooling, purchased Cadillacs, jewelry, furniture and "everything we needed." She identified the NFP Agreement, an authentic act executed before Ms. Shapiro on July 6, 1992. The preamble to the NFP agreement states that it is "entered into by and between the following individuals" and then names those individuals as John and Ida Noel and their children Elinus P. Noel, Peggy A. Daigle, Jill Lewis, John W. Noel, Jr., Rickey, and Lisa M. Noel, all of whom signed as parties principal to the agreement. Patricia was not named in the agreement and signed only in the capacity of witness.
According to the document, the purpose of the NFP is to collect and distribute all proceeds received from the Louisiana Lottery Commission. All income, gain, loss, deduction, credit and cash distributions are to be allocated equally among the partners in the percentage of 12.5% to each. Mrs. *618 Noel, Sr. was designated as Managing Partner, responsible for collecting and distributing all proceeds, and filling all necessary forms and tax returns. Ms. Lewis was named successor Managing Partner. The agreement contains no recital that the assets of the partnership shall be the separate property of the partners.
Patricia admitted on cross-examination that she was not a partner in NFP and did not supply any skill to or work for NFP.
Mrs. Noel, Sr. testified that she is the mother of Rickey and of five other children. On July 4, 1992, she and her husband won the lottery with a ticket she had filled out and for which she paid. The lottery proceeds were seven million dollars. She testified that when she discovered that she and her husband had won the lottery, they decided to donate a share of it to their children. She did not intend for the spouses of her three, or possibly four, married children to participate in the lottery proceeds. She did not expect anything from Rickey in return for the money.
Patricia, along with a daughter's husband and another friend, accompanied Mr. and Mrs. Noel, Sr. and their children to Baton Rouge to confect the partnership agreement. This was done two days after Mrs. Noel, Sr. won the lottery. Mrs. Noel, Sr. testified that she told Ms. Shapiro that she and her husband had just won the lottery and wanted to donate a share of the money to their six children. She and Mr. Noel, Sr. paid Ms. Shapiro for having drawn up and notarized the Partnership Agreement. Neither Patricia nor Rickey contributed anything to the cost of confecting the NFP document.
The lottery paid the proceeds to the Partnership, and each month, Mrs. Noel, Sr. receives a check from the lottery office and distributes the proceeds to the NFP members. She testified that Rickey does not do anything in furtherance of NFP. She testified that she and her husband had not discussed forming a partnership before they won the lottery.
On cross-examination, Mrs. Noel, Sr. testified that she could not remember if she had told the Louisiana Lottery that she and Mr. Noel, Sr. were the owners of the lottery proceeds, or whether she told the federal government that she and Mr. Noel, Sr. owned the proceeds, or whether she and Mr. Noel, Sr. paid the tax liability related to the lottery proceeds other than for their respective shares of NFP. On re-direct examination, Mrs. Noel, Sr. testified that the purpose of the partnership was to avoid paying tax and to protect the children's interest in the proceeds in the event of her and her husband's deaths.
Rickey testified that he did not contribute effort or skill in the creation of NFP or in the purchase of the winning lottery ticket. He corroborated his mother's testimony that he was not expected to do anything in return for his share of the lottery proceeds. Rickey identified his signature on the Partnership Agreement, but denied that he was able to read or write, a disability of which his parents and siblings were aware, and testified that his formal education ended at the seventh grade. He could not recall whether he executed other documents at the time he signed the Partnership Agreement.
Rickey testified that Patricia managed their family's finances for approximately two years, and denied that the lottery proceeds were spent for the benefit of his family, contending that Patricia spent the money for the benefit of her mother and sisters, paying their house notes and their children's tuition, and lending them money over his objection. His parents paid his children's tuition from their share of the lottery proceeds. He did not know if he had any of the lottery proceeds paid since *619 the termination of the community, and referred that question to his mother. Since then, he has supported himself on odd landscaping jobs and the lottery proceeds.
The parties stipulated that Mr. Noel, Sr. would testify that he purchased the winning lottery ticket, and he and his children would testify that when he and Mrs. Noel won the lottery, NFP was formed and the lottery proceeds were placed into NFP with the intention that the proceeds be donated to John and Ida Noel's children.
K. Justin Gibson, a Certified Public Accountant, testified by affidavit in accordance with the parties' pre-trial stipulation. Mr. Gibson said that he has been the tax preparer for NFP since 1995, and his file contains NFP's Partnership Tax Returns from 1992 through 2001.[2] According to Mr. Gibson, NFP was formed on July 6, 1992 for the purpose of receiving Louisiana lottery proceeds for Mrs. Noel, Sr. NFP receives an annual installment in the amount of $351,000 from the Louisiana Lottery Corporation, and declares "lotto proceeds" as its principal business activity and principal service. It has never engaged in investment or business activities and acts solely as a pass-through entity for Federal and State Income Tax purposes. It has not distributed proceeds to Rickey since 1998. The present value of the future stream of revenue payments to NFP and, through NFP to each of its partners, is $444,187.04.
The trial court made only one explicit finding of fact in its judgment, that the lottery proceeds were not acquired through Rickey's effort, skill or industry, but through the effort, skill and industry of Ida and John Noel. This finding is to be reviewed under the manifest error standard. Hill v. Morehouse Parish Police Jury, 95-1100, p. 4 (La.1/16/96), 666 So.2d 612, 614. Implicit in this finding were several subsidiary findings either necessary to reaching the aforementioned explicitly stated finding or necessarily resulting from that finding. These implicit findings are also subject to the manifest error standard of review. Delaney v. Humana Hosp., 01-0389, p. 8 (La.App. 4 Cir. 10/16/02), 830 So.2d 1072, 1078; Ruby v. Jaeger, 99-1235, p. 4 (La.App. 4 Cir. 3/22/00), 759 So.2d 905, 907.
The record contains no evidence that Rickey suggested the winning numbers to his parents or participated in the purchase of the tickets. Furthermore, there is no evidence that Rickey, who was illiterate according to his mother's uncontradicted testimony and unable even to prepare a check, has participated in the management of NFP. Therefore, we accept for the purposes of this appeal the finding that the lottery proceeds were not acquired through Rickey's effort, skill or industry and that they were instead acquired by his parents. Implicit in this finding is the further finding that any interest Rickey acquired, he necessarily acquired from his parents and any such acquisition by him was "purely gratuitous" as that term is employed in the donation articles, La. C.C. art. 1467, et seq.
The trial court's legal conclusions, that Mr. and Mrs. Noel, Sr. donated the proceeds to Rickey via the NFP and that Rickey's interest in NFP is his separate property are reviewed on appeal de novo.
There is no evidence of record that Rickey contributed efforts or resources to the NFP or to the purchase of the winning *620 ticket. To the contrary, the evidence is uncontroverted that he contributed nothing to the partnership or to purchase of the lottery ticket.
La. C.C. art. 2338 provides that:
The community property comprises: property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse; property acquired with community things or with community and separate things, unless classified as separate property under Article 2341; property donated to the spouses jointly; natural and civil fruits of community property; damages awarded for loss or injury to a thing belonging to the community; and all other property not classified by law as separate property.
La.C.C. art. 2341 defines separate property in pertinent part as follows:
The separate property of a spouse is his exclusively. It comprises: property acquired by a spouse prior to the establishment of a community property regime; property acquired by a spouse with separate things or with separate and community things when the value of the community things is inconsequential in comparison with the value of the separate things used; property acquired by a spouse by inheritance or donation to him individually.... [Emphasis added.]
Rickey argues that the effect of these codal provisions is to make his partnership payments separate, since they were not earned through his effort, skill or industry, but were instead acquired by his parents and transferred to him gratuitously.
La. C.C. art. 2339 provides that the natural and civil fruits of the separate property of a spouse, are community property. While La. C.C. art. 2339 allows a spouse to reserve such civil fruits as separate property by a declaration made in an authentic act or in an act under private signature duly acknowledged, such was not done in the instant case. Id. La. C.C. art. 2340 establishes a rebuttable presumption, upon which Patricia relies, that everything of value in the possession of a spouse during the existence of the regime of community is community property. However, the Supreme Court recently held in Talbot v. Talbot, 03-0814, p. 6 (La.12/12/03), 864 So.2d 590, 600, that the Article 2340 presumption of community is rebuttable upon a mere preponderance of the evidence, rejecting all prior jurisprudence requiring a stricter standard of proof.
Whatever interest Rickey may be said to have acquired in the NFP and/or the proceeds of the lottery was acquired gratuitously, which is implicit in the trial court's finding that it was not acquired through his effort, skill or industry. La. C.C. art. 1523 refers to three kinds of donations:
There are three kinds of donations inter vivos:

The donation purely gratuitous, or that which is made without condition and merely from liberality;
The onerous donation, or that which is burdened with charges imposed on the donee;
The remunerative donation, or that the object of which is to recompense for services rendered.
Clearly, whatever interest Rickey acquired in the NFP and/or the lottery proceeds was acquired "purely gratuitously." Patricia does not contend that any charges were imposed upon him such that the transfer would be characterized as an onerous donation under La. C.C. art. 1524.
Likewise, Patricia does not contend that any interest acquired by Rickey in the NFP and/or the lottery proceeds was acquired *621 by him as recompense for any services rendered by him such that the transfer might be characterized as a remunerative donation under La. C.C. art. 1525.
The essence of one of Patricia's arguments is that the lottery ticket and the right to receive the proceeds therefrom are among those "incorporeal things, such as rents, credits, rights or actions," described in La. C.C. art. 1536. La. C.C. art. 1536 requires any donation of incorporeal things, such as the donation to Rickey of an interest in the lottery ticket or the right to the lottery proceeds to be in the form of a notarial act "under the penalty of nullity." There is no document in this case expressly styled, "Act of Donation."[3] However, if the donation to Rickey is a nullity it does not result in effectively transferring a one-half interest therein to Patricia as community property. If the transfer to Rickey is a nullity it merely means that his parents were never divested of his share of the lottery proceeds. Accordingly, we are compelled to find that Patricia has no right of action to assert the invalidity as to form of the donation.[4] That is an action that could only be brought by Rickey's parents, heirs or creditors, depending on the circumstances.
For the same reason, we are compelled to note that it avails Patricia nothing to assert the impropriety of the assignment of the right to the lottery proceeds to Rickey or to the NFP under La. R.S. 47:9025B(1)[5] as the ineffectiveness of any such assignment could mean only that the interest in the lottery proceeds claimed by Patricia is still vested in Rickey's parents.
As a result of our foregoing analysis of Patricia's contention concerning the questions of donation and assignment we have exercised our authority under La. C.C.P. art. 927B to notice on our own motion that Patricia has no right of action to assert the nullity of any donation made to Rickey by his parents and no right of action to assert the nullity of any assignment of lottery proceeds to Rickey and/or the NFP as Patricia can gain nothing from the success of such assertions. Therefore, we need not address the status of either the donation or the assignment. All that we are in a position to do is to find that if Rickey has any interest in the lottery proceeds and/or NFP, then he acquired such interest from his parents gratuitously, and as such the interest would be his separate property under La. C.C. art. 2341.
Patricia also contends in her original brief, in the alternative, that Rickey failed to prove that she was not also a donee of the lottery proceeds:
[E]ven if there were competent evidence of a donation, sufficient evidence was not presented to show the donation was intended to be only[[6]] to Rickey....
Mrs. Noel, Sr. testified that it was her intention to make a donation to her children and this was supported by the stipulation that John and Rickey's siblings would give the same testimony if called *622 upon to do so. This is corroborated by the fact that Patricia admitted to being present when the NFP document was executed, but she was not named therein. We infer that Patricia seeks to extend the presumption of community to a presumption of donative intent to her, but there is no such presumption to support her position. There is much competent evidence in the record indicating that there was no intention of donating anything to Patricia and none to the contrary other than Patricia's own testimony. When asked on cross-examination why she was not included as a partner in spite of the fact that she was present when the document was executed, she testified:
Because his mother said it was for her and the kids. They had eight children and they went to an attorney in Baton Rouge and put the mother, the father and the eight children which the mother also included all the married spouses for their families too.
The trial court made the implicit finding that there was no donation to Patricia when it found the property to be Rickey's separate property. The identity of the donee or donees is controlled or determined by the intention of the donor. Purcell v. Purcell, 29,663, p. 7 (La.App. 2 Cir. 6/23/97), 697 So.2d 728, 733. Resolution of this issue is a factual determination to be made by the trial court. Id., p. 8. Such a resolution will not be disturbed on appeal unless clearly wrong, i.e., manifestly erroneous. Id. As is shown by our analysis of the evidence on this issue derived from our review of the entire record, there is more than ample evidence to support the trial court's implicit finding based on a manifest error standard of review or even based on a de novo standard of review.
Patricia's final contention is that even if Rickey's interest in the NFP had been acquired by him by donation as his separate property, his share of the annual lottery payments accruing after termination of the community constitutes fruits belonging to the community under La. C.C. art. 2339. Patricia's position as expressed in her original brief is that because Rickey's "right to receive his share of the lottery annual payments from the partnership became exigible at the moment the lottery prize was claimed, all of the payments, including those that may come due after termination of the community, constitute fruits and revenues under La. Civ.Code art. 2339." We are compelled to disagree because if we follow this reasoning to its conclusion it means that all of the future payments are conflated into a single immediate present right which then must be viewed as the asset itself rather than the community fruits of the asset. We can find no authority in support of this contention.
Accordingly, we find no manifest error in either the express factual findings of the trial court that the lottery proceeds were not acquired through any effort, skill or industry of Rickey's, but were acquired through the effort, skill and industry of his parents. We find no error in the implicit conclusion that whatever interest Rickey may have acquired, he acquired gratuitously. We further find no error in the trial court's conclusion that whatever interest Rickey had was his separate property and that Patricia has no community interest in the lottery proceeds and/or NFP.
For the foregoing reasons the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] The record does not contain a report from the Certified Public Accountant acting on Patricia's behalf.
[2] The affidavit refers to "Exhibit APartnership Tax Returns from 1992-2001, In Globo"; however, this exhibit is not in the record. A copy of Rickey and Patricia's joint return for 1992 is in the record. However, none of the controlling issues in this case would be affected by the presence or absence of the tax returns.
[3] The NFP was executed before a notary and two witnesses and could, therefore, arguably be an act of donation in substance although not denominated as such. However, the parties stipulated that no written Act of Donation was executed by Mrs. John Noel, Sr. In any event, we need not resolve this issue as to do so would do nothing to advance Patricia's case.
[4] This Court may take notice of the exception of no right of action on its own motion. La. C.C.P. art. 927B.
[5] La.R.S. 47:9025 B(1) provides in pertinent part that: "No prize, nor any portion of a prize, nor any right of any person to a prize awarded shall be assignable."
[6] Emphasis original.