PAUL A. BONIN, Judge.
 

 11 This appeal arises from a community property partition suit between Ms. Sri Katner and Mr. David Katner. Ms. Kat-ner appeals the trial court’s judgment. For the reasons which follow, we affirm in part, and reverse in part, and render.
 

 I
 

 The Katners were married on June 30, 1991, in New Orleans and made their domicile in the city, establishing the community property regime which governs this cause. La. C.C. art. 2334. During the course of their marriage they acquired a home in the Carrollton section of the city as well as automobiles, furniture, and financial accounts. The community regime was terminated effective June 13, 2001.
 
 [1]
 
 On the date of termination, the community consisted of assets, and there were no community liabilities.
 

 Ms. Katner filed the initial petition for partition on January 6, 2004.
 
 See
 
 La. C.C. art. 2369.8 and La. R.S. 9:2801. During the pendency of the partition trial, the trial court, on the joint motion of the parties, authorized a
 
 partial
 
 partition by | ¡.consent of the home in Carrollton and of one of two automobiles.
 
 See, e.g., Westcott v. Westcott,
 
 08-1339, p. 2-4 (La.App. 4 Cir. 4/17/09), 11 So.3d 45, 48-50. The judgment was rendered on April 30, 2004. The full ownership of the home was transferred to Mr. Katner, subject to an unspecified future “equalization,” and the automobile, a Nissan, was transferred to Ms. Katner.
 

 The parties filed sworn descriptive lists, which were later supplemented and amended.
 
 See
 
 La. R.S. 9:2801. No traversals, identified as such, were ever filed.
 
 See
 
 La. R.S. 9:2801(A)(2). The partition trial centered on the proper valuation of the assets, the allocation of the assets, the parties’ respective claims for reimbursement, and Mr. Katner’s disputed claim for what he characterized as advances to Ms.
 
 *570
 
 Katner against her share of the community property. After a trial, the trial court entered a judgment April 30, 2009, and an amended judgment on May 6, 2009.
 

 The judgment valued the assets at $377,595. Generally, the trial court in its judgment made findings concerning the valuation of assets and the reimbursement claims as well as Mr. Katner’s claim for advances in line with his contentions and rejected Ms. Katner’s arguments. The findings and the parties’ contentions and arguments will be explained in detail. In the end, the trial court concluded that Ms. Katner, as noted earlier, owed Mr. Katner the net sum of $1,024 and rendered judgment against her.
 
 [2]
 

 II
 

 The value of the assets, not them classification as community, is at issue. The trial court valued the principal asset, the home, at $350,000 as of the date of its | .Transfer to Mr. Katner. Ms. Katner argues that the trial court erred in two respects: first, that the trial court committed legal error in not valuing the home as of the date of the partition trial on March 19, 2009,
 
 [3]
 
 and, second and alternatively, that the trial court committed manifest error in not accepting the “appraisal” of its higher value as of 2004.
 

 La. R.S. 9:2801 A(4)(a) provides that the court is to value community assets “at the time of the trial on the merits.” The statute, however, neither addresses partial partitions by consent nor, even more so, such partitions where the value of the asset is not particularly expressed in the partial partition. We, therefore, see the issue of the appropriate date of valuation as one not so much of a question of law, but a question of fact. As a question of fact, the intentions of the parties dominate.
 

 The parties’ “Act and Consent Judgment of Partial Partition of Community Property” was read in open court on March 23, 2004, and signed on April 30, 2004. Louisiana law gives consent judgments the authority of law: “A consent judgment is a determination of the rights of the parties and acquires the authority of the thing adjudged.”
 
 Thibodeaux v. Thibodeaux,
 
 511 So.2d 102, 104-105 (La.App. 3rd Cir.1987). Had the property been a community immovable, Ms. Katner’s concurrence in its alienation would have been required. La. C.C. art. 2347. As a co-owner in indivisión she was free to alienate her share. La. C.C. art. 805. Under the consent judgment entered into by these parties, the property ceased its classification as either community property or former community property and, therefore, Ms. Katner had no further obligations as an owner in community or a coj^owner in indivisión in connection with the home.
 
 See
 
 La. C.C. arts. 2338 and 2369.1.
 

 The record is clear that in 2004 Ms. Katner was desirous of alienating her undivided interest to her former spouse in return for the immediate payment by him of a substantial amount of cash. She was not, at that time, entitled to any spousal support. The record is also clear that the parties disagreed, but within a limited range of $350,000 to $399,000, about the value of the home. The parties invoked and expressly stipulated that their agree
 
 *571
 
 ment was made pursuant to La. C.C. art. 3071, which provides:
 

 A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship.
 

 The parties, in open court in March 2004, were clear that they expected to resolve the issue of the proper valuation at a May 2004 hearing which was scheduled.
 
 [4]
 
 They also agreed in the act of partial partition that, after the immediate payment of cash, “whatever additional monies are owed by David Katner to Sri Katner, if any, pursuant to the entirety of the community property partition, such monies shall be paid ten days upon the determination of the amount with no additional extension of time granted for him to pay same.”
 

 Therefore, we determine that, first, Ms. Katner had the legal authority to alienate her interest in the former community property and, second, the trial judge was reasonable, and perhaps even compelled, in determining as a matter of fact that the parties intended and agreed to value their home as of the date of its transfer to Mr. Katner in March 2004 and not at “the time of the trial on the merits [of the partition proceedings].” We further conclude, in accord with the parties’ disagreement and the consent judgment, that any difference between the immediate payment made by Mr. Katner at the time of the alienation by Ms. Katner and the entitlement, if any, of Ms. Katner to an equalizing payment due at the time of the partition was correctly deferred until the time of the trial of the partition.
 

 The second objection that Ms. Kat-ner expressed to the valuation of the home was that the trial judge accepted the appraisal offered by Mr. Katner and rejected the one offered by Ms. Katner. There was a difference in the two appraised values of nearly $50,000. A trial judge’s determination of value is a finding of fact,
 
 State Department of Highways v. Regent Development Corp.,
 
 344 So.2d 46, 50 (La.App. 4th Cir.1977),
 
 see also State Department of Highways v. Ragusa,
 
 234 La. 51, 99 So.2d 20, 22-23 (1958), and under the manifest error rule, we will not reverse the finding of fact unless it is manifestly erroneous.
 
 Stobart v. State Department of Transportation and Development,
 
 617 So.2d 880, 882 (La.1993);
 
 Rosell v. ESCO,
 
 549 So.2d 840, 844 (La.1989);
 
 Rando v. Anco Insulations, Inc.,
 
 08-1163, p. 21 (La.5/22/09), 16 So.3d 1065, 1082. To discharge our review function, we consider the record as a whole to determine if the factual finding is a reasonable finding.
 
 Valley v. Specialty Restaurant Corp.,
 
 98-0438, p. 6 (La.App. 4 Cir. 1/19/99), 726 So.2d 1028, 1032.
 

 On the one hand, Mr. Katner’s offer of a valuation for the home was prepared by a Louisiana licensed appraiser.
 
 See generally
 
 La. R.S. 37:3393-98. His appraisal was accepted without objection into evidence. La. C.E. art. 103. His appraisal constitutes expert opinion evidence which is designed to assist the fact finder in making a finding which requires some specialized knowledge, learning and experience. La. C.E. art. 702.
 
 See Burrell v. Schlesinger,
 
 459 So.2d 1195, 1199 (La.App. 4th Cir.1984);
 
 Grusich v. Grusich,
 
 447 So.2d 93, 96 (La.App. 4th Cir.1984). On the other hand, Ms. Katner’s offer of valuation, which the trial court refused to admit into evidence, was not prepared by a licensed appraiser, but rather by a real estate broker.
 
 See generally
 
 La. R.S. 37:1431-38. The trial court disqualified the “appraisal” prepared by a real estate broker who is not also a li
 
 *572
 
 censed real estate appraiser. We review that decision under the abuse of discretion standard.
 
 Cheairs v. State ex rel. DOTD,
 
 03-680, p. 6 (La.12/3/03), 861 So.2d 536, 541;
 
 see also Radlein v. Holiday Inns, Inc.,
 
 07-0322, p. 7 (La.App. 4 Cir. 11/14/07), 971 So.2d 1200, 1205. The trial judge has much discretion in determining whether the qualifications of a learned person will assist the court in its fact finding function.
 
 Cheairs, supra,
 
 03-0680 at p. 7, 861 So.2d at 540-41.
 

 Estimating the fair market value of property is the specialized function of licensed appraisers. La. R.S. 37:3393. While experienced real estate brokers undoubtedly know a great deal about property values, the specialized scope of the realtors’ profession is not property appraising and may well be beyond the legal authorization afforded the profession.
 
 Id.
 
 The trial court did not abuse its much discretion in rejecting Ms. Katner’s “appraisal.”
 
 [5]
 
 Therefore, the only evidence of value of the home in 2004 is the appraisal in the amount of $350,000, and the trial court’s finding of fact that such was the home’s value at the time of the consent judgment is not clearly wrong and is reasonable.
 

 Ms. Katner makes a similar argument about the valuation of the Nissan automobile which was included in the partial partition consent judgment in 2004. |7 She argues that the court should have valued the Nissan at the time of the partition trial, a value of zero. Mr. Katner argues that the parties by consent established the car’s value as $7,000 at the time it was transferred to Ms. Katner. Ms. Katner offered no alternative value for the Nissan as of the time of its partitioning in 2004. The legal precepts applicable to the valuation of the home also apply to the valuation of the Nissan. The only evidence of its value in 2004 is the $7,000 value stipulated in the consent judgment. The trial court’s valuation is not manifestly wrong.
 

 The parties disputed the valuation of a Honda automobile. The trial court utilized the Kelley blue book values without objection from the parties.
 
 See Kelley Blue Book Co., Inc., 1995-2009; Neloms v. Empire Fire & Marine Ins. Co.,
 
 859 So.2d 225, 232 (La.App. 2 Cir. 10/16/03) (observing that the Blue Book valuation is not excluded under the hearsay rule, La. C.E. art. 803(17), and introduction of such a book was “perfectly acceptable” and not reversible error).
 
 See also Clark v. McNabb,
 
 04-0005, p. 4-5 (La.App. 3 Cir. 5/19/04), 878 So.2d 677, 680-81 (“Whether a NADA Guide or a Kelley Blue Book valuation is superior to another calculation is a question of fact that must be examined on a case-by-case basis.”) After hearing testimony from the parties about the car’s condition, the court selected the lesser one of $5,500 and rejected Ms. Katner’s contentions that the car’s condition justified a valuation about $700 higher. Again, we have reviewed the evidence and conclude that the fact finder did not commit manifest error in valuing the Honda automobile at $5,500.
 

 |8The parties stipulated to the valuation of the remaining assets: $5,850 for furniture, $878 for the Gabelli Fund, $4,730 for
 
 *573
 
 the Jackson annuity, and $2,500 for an IRS refund check. The total valuation of the community’s assets is $376,458.
 
 [6]
 

 Ill
 

 Ms. Katner assigns error to some of the claims for reimbursement allowed to Mr. Katner and to the denial of her own single reimbursement claim as well as her claim for the return of personal property. Mr. Katner made three different types of reimbursement claims. Whether a reimbursement claim is allowed is a finding of fact which is reviewable under the manifest error standard. Below we first consider Mr. Katner’s claims and then consider the merits of Ms. Katner’s claims.
 

 A
 

 Mr. Katner made two claims for reimbursement of his separate estate for funds used to acquire community assets. La. C.C. art. 2367 provides in pertinent part:
 

 If separate property of a spouse has been used for the acquisition, use, improvement, or benefit of community property, that spouse upon termination of the community is entitled to one-half of the amount or value that the property had at the time it was used. The liability of the spouse who owes reimbursement is limited to the value of his share in the community after deduction of all community obligations....
 

 The first claim relates to the expenditure of $9,500 of his separate funds for the community’s acquisition of the Nissan automobile. Mr. Katner testified that after the marriage he sold an automobile he owned prior to the marriage for $9,500 and used the sale proceeds as the down payment on a new car. He produced a|flcopy of the check from the purchaser as well as a copy of the bill of sale for the new car from the dealer. On appeal, Ms. Katner does not contest this claim. Mr. Katner is entitled to reimbursement on this claim in the amount of $4,750.
 
 [7]
 

 The second claim, which Ms. Kat-ner does forcefully oppose, is related to Mr. Katner’s evidence that he used his separate funds in the amount of $42,500 toward the down payment on the community’s acquisition of the home in Carroll-ton. Ms. Katner asserts the general, and codally established, principle concerning the presumption that property is community. La. C.C. art. 2340 states:
 

 Things in the possession of a spouse during the existence of a regime of community of acquets and gains are presumed to be community, but either spouse may prove that they are separate property.
 

 There is here, of course, no disagreement about the classification of the home as community. The burden of proof is on Mr. Katner to establish the use of separate property in the acquisition of community property. In
 
 Rogers v. Rogers,
 
 94-541, p. 4 (La.App. 5 Cir. 12/9/94), 649 So.2d 7, 9, the fifth circuit helpfully explained:
 

 The burden of proof is on the spouse claiming reimbursement of the separate funds which he contends were used for the benefit of the community. La. C.C. art. 2340 creates a presumption in favor of the community. Thus, the burden
 
 *574
 
 was on the [claiming spouse] to provide proof, rebutting the presumption in favor of the community and establishing that his separate funds were used for the acquisition of a community asset.
 

 The evidence established that the home was purchased for $167,000, and that the Katners were obligated on a mortgage loan in the initial amount of $119,000. The couple, therefore, required at least cash funds in the amount of $48,000. Mr. Kat-ner claims that he used funds received from the sale of his separate property as well as separate funds in two financial accounts.
 

 | inThere is no doubt that Mr. Katner sold separate property just before the couple acquired the Carrollton home. He submitted evidence that, after satisfaction of the mortgage, he netted nearly $25,000 from the sale. Ms. Katner concedes that she was aware that these funds were used for the down payment. She argues that Mr. Katner did not carry his burden of proof on the balance of the claimed down payment. Mr. Katner testified that he liquidated two financial accounts, which he identified, with his separate funds of $12,555 and $6,158 and expended the funds on the acquisition. Ms. Katner offered no evidence to contradict Mr. Katner’s testimony, which the trial judge accepted and which is not contrary to documentary evidence. La. C.E. arts. 304-306. As Justice Tate noted in
 
 West v. Bayou Vista Manor, Inc.,
 
 371 So.2d 1146, 1147 (La.1979):
 

 In evaluating the evidence, the trier of fact should accept as true the uncontra-dicted testimony of a witness, even though the witness is a party, at least in the absence of circumstances in the record casting suspicion on the reliability of this testimony, [citations omitted].
 

 Although it was not her burden to prove that community funds were exclusively used in the acquisition of the home, it is noteworthy that Ms. Katner does not suggest that the community had sufficient funds on hand for the portion of the down payment in question. In
 
 Succession of Videau,
 
 197 So.2d 655, 660 (La.App. 4th Cir.1967) this court stated
 

 ... the proof of benefit to the community need not be with absolute exactness. Such a requirement could rarely, if ever, be met and just claims would be defeated. Recovery has been allowed upon circumstantial evidence in situations where the court was convinced that the community had received the benefit.
 

 See also Rogers, supra; Lane v. Lane,
 
 375 So.2d 660, 675-676 (La.App. 4th Cir.1979),
 
 Succession of Blythe,
 
 496 So.2d 1180, 1183 (La.App. 4th Cir.1986).
 
 [8]
 
 Thus the trial court did not commit manifest error in its finding that Mr. Katner is entitled to reimbursement of one-half of the $42,500 of separate funds expended by him. The trial judge properly awarded him reimbursement on this item. The reimbursement due him on this claim is $21,250.
 

 Mr. Katner made one claim for reimbursement of the community funds in the amount of $14,004 for the payment of the separate debt of Ms. Katner. La. C.C. art. 2364 provides:
 

 If community property has been used to satisfy a separate obligation of a spouse, the other spouse is entitled to reimbursement upon termination of the community property regime for one-half of
 
 *575
 
 the amount or value that the property had at the time it was used.
 

 Prior to her marriage, Ms. Katner obligated herself for student loans for her legal education. During the marriage, Mr. Kat-ner clearly testified from financial records and his personal knowledge that community funds were used to repay some of the outstanding principal and interest indebtedness. Ms. Katner agrees that the community paid more than $11,000, but quibbles about the difference.
 
 [9]
 
 However, she did not offer any documentary evidence to contradict Mr. Katner’s offer. Again, the trial court did not commit manifest error in accepting the evidence offered by Mr. Katner and finding that community funds in the amount of $14,004 were used to pay Ms. Katner’s separate obligation. Therefore, Mr. Katner is entitled to be reimbursed on this claim in the amount of $7,002.
 

 Mr. Katner’s final reimbursement claim, which is not opposed by Ms. Katner, is for the use of his separate property for the benefit of the former community property. La. C.C. art. 2369.1 provides:
 

 After termination of the community property regime, the provisions governing co-ownership apply to former community property, unless otherwise provided by law or by juridical act.
 

 When the community property regime terminates for a cause other than death or judgment of declaration of death of a spouse, the following Articles also apply to former community property until a partition, or the death or judgment of declaration of death of a spouse.
 

 La. C.C. art. 806 is, therefore, applicable to these reimbursements.
 
 [10]
 
 Article 806 provides:
 

 A co-owner who on account of the thing held in indivisión has incurred necessary expenses, expenses for ordinary maintenance and repairs, or necessary management expenses paid to a third person, is entitled to reimbursement from the other co-owners in proportion to their shares.
 

 If the co-owner who incurred the expenses had the enjoyment of the thing held in indivisión, his reimbursement shall be reduced in proportion to the value of the enjoyment.
 

 Mr. Katner offered testimonial and documentary evidence to show that he paid, from his separate funds, taxes, insurance, and repairs for the former community home from the time of the termination of the community on June 13, 2001 until the partition and transfer of the home to him on April 30, 2004. The ad valorem or property taxes paid by him for the years 2002 and 2003 and for the first four months of 2004 total $3,566. The total insurance premiums paid during that period equal $1,976 and the total amount of repairs equal $5,880. The total expenditures of Mr. Katner’s separate funds on former community property equal $11,422. Mr. Katner is entitled to be reimbursed on this claim in the amount of $5,711.
 

 | lsThe total amount due Mr. Katner on his reimbursement claims is $38,713.
 

 B
 

 Ms. Katner made a reimbursement claim for an alleged gift of $15,000 to her from her father which she claimed was expended in part for community obligations.
 
 [11]
 
 A gift or donation to one spouse
 
 *576
 
 is that spouse’s separate property. La. C.C. art. 2341; see
 
 Noel v. Noel,
 
 04-0105, pp. 7-12 (La.App. 4 Cir. 9/8/04), 884 So.2d 615, 619-22. There was no evidence of the gift from her father other than her own testimony. She did attempt to offer the affidavit of her father in support of her claim, but Mr. Katner objected to the admission of the affidavit as hearsay.
 
 See
 
 La. C.E. art. 803. The trial judge excluded the affidavit from evidence. Ms. Katner then proffered the affidavit. La. C.E. art. 103 A(2). The trial judge’s evidentiary ruling was correct. Even if the affidavit would have been admissible, it would only have corroborated that Ms. Katner
 
 received
 
 the gift from her father; it would not have supported her contention that the funds were actually expended for the benefit of the community, which is essential to a claim for reimbursement. The trial court’s rejection of this reimbursement claim is not manifestly erroneous.
 

 Ms. Katner also argues that the trial court erred by failing to address in its judgment her claim for return of some items of her separate property. The trial court heard considerable testimony from the parties and from Mr. Katner’s friend and former attorney about the return of Ms. Katner’s property. Silence in the judgment on this claim constitutes rejection of the claim. Louisiana law has held that an absence of written adjudication of a litigated issue is construed to mean that there was no award under that claim, and it is rejected.
 

 The Louisiana Supreme Court in
 
 Sewell v. Argonaut Southwest Ins. Co.,
 
 362 So.2d 758, 760 (La.1978), stated the “civilian res judicata” theory:
 

 A demand may also be impliedly rejected by the silence of a judgment which fails to grant the demand, provided that the matter has been actually litigated and finally adjudged so that it became an “object of the judgment.”
 

 In
 
 R.G. Claitor’s Realty v. Juban,
 
 391 So.2d 394, 398 (La.1980), the Louisiana Supreme Court reiterated that principle:
 

 Our jurisprudence has rested on a solid foundation the rule that all the issues presented by the pleadings, and on which evidence has been offered, will be considered as disposed of by a final judgment in the cause, and that demands passed over in silence must be considered as rejected in the absence of a special reservation, [citations omitted].
 

 See also City of Eunice v. Credeur,
 
 02-188, p. 3 (La.App. 3 Cir. 10/9/02), 828 So.2d 710, 712;
 
 Lowe v. Prejean,
 
 540 So.2d 436, 438 n. 2 (La.App. 1 Cir.1989).
 

 The trial court was in the best position to observe the witnesses and evaluate the credibility of each one on this issue.
 
 See Rosell, supra,
 
 549 So.2d at 844. Ms. Katner admitted that there were several efforts over the years to return her belongings to her. Mr. Katner’s friend returned some of her belongings, and one of the Katners’ handymen returned some. We have reviewed the testimony on this issue and conclude that the trial court did not commit manifest error in its implicit finding that there was no further personal property to be returned to Ms. Katner.
 

 Therefore, Ms. Katner is not entitled to any reimbursement.
 

 IV
 

 Ms. Katner’s one-half share of the community assets is $188,229. At the time of the partial partition in 2004 Ms. Katner received a cash payment from Mr. Katner in the amount of $117,950. At that same time she received the Nissan automobile valued at $7,000. The judgment also allo
 
 *577
 
 cates to Ms. Katner the |15Jackson annuity ($4,730) and one-half of the Gabelli Fund ($439). The first net amount due her is $58,110. This is reduced by the reimbursements due by her to Mr. Katner totaling $38,713 plus an additional stipulated reimbursement of $3,693.
 
 [12]
 
 Therefore, the revised net amount due her from Mr. Katner on the settlement of the community is $15,704.
 

 Mr. Katner, however, argues, and the trial court agrees, that he already “advanced” from his separate property to Ms. Katner amounts totaling $26,162. Ms. Katner strenuously objects to the recognition of the advances. She has multiple objections. She contends that the $10,420 in direct payments to her by Mr. Katner were not advances to her on her share of the community but, rather, were voluntary support payments to her. The remaining advances of $15,742 were not direct payments to
 
 her,
 
 and the proof of payments to third parties is lacking, according to Ms. Katner.
 
 [13]
 

 Based upon our review of the testimony and documentary evidence, we conclude that there is merit to some of Ms. Katner’s contentions. Below we discuss our analysis and application of the legal principles which guide our conclusion.
 

 A
 

 A major point of disagreement between the parties is the meaning and effect of the dismissal with prejudice of all of Ms. Kat-ner’s claims for interim and final spousal support. Mr. Katner contends, and the trial court apparently agreed, that the dismissal means that he had no spousal support obligation whatsoever to Ms. Katner and that, as a consequence, all payments made by him to her or on her |1fibehalf after the date of termination of the community constitute advances on the community for which he is entitled to a credit. Ms. Katner, to the contrary, argues that the dismissal was on her consent, not by adjudication; and that by the time of the dismissal the issues were moot because Mr. Katner had made voluntary payments which satisfied his support obligations to her. Consequently, she contends, to permit him a credit for those payments would grant him a double benefit.
 

 The petition for divorce was filed on June 13, 2001. During the following months, Mr. Katner wrote letters to Ms. Katner in which he unambiguously described the direct and indirect payments he was making to her as “voluntary support.” The letters make plain that Mr. Katner is, in making the payments, fully expecting them to be credited to any subsequent judicial determination of his interim spousal obligations. La. C.C. art. 113, as it read during the applicable period,
 
 [14]
 
 provided:
 

 Upon motion of a party or when a demand for final [final spousal] support is pending, the court may award a party an interim periodic [spousal] allowance based on the needs of that party, the ability of the other party to pay, and the standard of living of the parties during the marriage. The obligation to pay interim periodic [spousal] support shall
 
 *578
 
 not extend beyond one hundred eighty days from the rendition of judgment of divorce, except for good cause shown.
 

 Moreover, La. R.S. 9:321 D provided that
 

 Spousal support of any kind, except that paid pursuant to an interim allowance award, provided by the debtor from the date of judicial demand to the date the support judgment is rendered, to or on behalf of the spouse for whom support is ordered, shall be credited to the debtor against the amount of the judgment.
 

 Mr. Katner was seeking a no-fault divorce. La. C.C. art. 103(1). Ms. Katner was seeking interim spousal support at that time. The testimony and documentary evidence amply establish that during this period Ms. Katner was suffering considerable emotional difficulties and, despite her license to practice law, was unemployable. Mr. Katner under these facts, corroborated by his contemporaneous letters, surely believed he was making
 
 interim
 
 spousal support payments to Ms. Katner for which he would receive a credit against an expected judgment condemning him to pay support. The trial court’s factual determination to the contrary is clearly wrong and we so find. The Supreme Court in
 
 Rosell v. ESCO,
 
 549 So.2d 840, 844 (La.1989) noted that the ordinary rule of deference to the fact finder is qualified “where documents or objective evidence so contradict the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination.”
 
 See also Shroyer v. Grush,
 
 555 So.2d 534, 538 (La.App. 4th Cir.1989). We are reinforced in our view when we consider that Mr. Katner’s direct and indirect voluntary payments virtually ceased after the dismissal with prejudice of Ms. Kat-ner’s spousal support rules on January 16, 2003.
 
 [15]
 

 Therefore, we find from the record on our
 
 de novo
 
 review that the direct payments to Ms. Katner from the date of the filing of the petition for divorce until one hundred eighty days after the judgment of divorce (i.e., June 19, 2002) were intended by Mr. Katner and were in fact voluntary interim spousal support payments made by him to discharge his legal obligation of support to his wife and |1Rfor a limited time his former wife.
 
 [16]
 
 Our conclusion is consonant with the codal rules on imputation of payments of debt.
 
 See
 
 La. C.C. arts. 1864 and 1868.
 

 With regard to the indirect payments made by Mr. Katner on behalf of Ms. Katner,
 
 see
 
 La. R.S. 9:321 D, which include hospitalization insurance premiums, medical deductibles, and automobile insurance premiums, we apply the same finding, except that in the case of hospitalization and medical deductibles his spousal support obligation terminated by judgment dated December 21, 2001. That judgment relieved Mr. Katner of any
 
 obligation
 
 to make these payments after that date and such payments could not reasonably be construed as interim spousal support.
 
 [17]
 

 B
 

 As to any direct or indirect payments made after the applicability of the period
 
 *579
 
 for interim spousal support, we conclude that the trial court’s factual findings are reasonable and not contradicted by documentary evidence, notwithstanding the remarkable coincidence that all such payments did not cease until the dismissal with prejudice of Ms. Katner’s rules for interim and final spousal support. In order to be eligible for final spousal support, it would have been necessary for Ms. Katner to establish that she was “free from fault” prior to the filing of the petition for divorce. La. C.C. arts. 111 and 112. There is ample evidence in the record without our elaborating upon it that supports a reasonable conclusion and surely a reasonable expectation by Mr. Katner that Ms. Katner could not establish her freedom from fault. Indeed, rather than attempt to prove |1sher freedom from fault, Ms. Katner voluntarily dismissed her claim for final spousal support.
 

 Therefore, if Mr. Katner can establish payment of the contested items, Mr. Kat-ner is entitled to have credited to him the total of the direct and indirect payments made by him
 
 after
 
 June 19, 2002, which amount is $13,801.
 

 C
 

 Ms. Katner finally argues that Mr. Katner has not satisfactorily established that he actually paid some of her debts. We understand this argument to be limited to the payment of medical deductibles. The primary evidence of payment are check register records of payments made to a collection agency along with insurance company explanation of benefits records, which usually coincide with the record of payments. There are few payments directly to healthcare providers. Having disallowed credit for any payments made before December 21, 2002, we are concerned only with those payments made after that date and which we consider could be eligible for crediting Mr. Katner.
 

 The consent judgment of December 21, 2001 included the following provision:
 

 “IT IS FURTHER ORDERED, ADJUDGED AND DECREED that David Katner shall furnish Sri Katner with copies of all bills concerning her hospitalization and treatment as they become available, and
 
 Sri Katner will handle the insurance aspects of assuring payment. Sri Katner shall keep David Katner informed at all times as said bills are paid or otherwise disposed of[.]”
 
 (emphasis supplied)
 

 Mr. Katner’s testimony, corroborated by the documentation, such as it was, was accepted as truthful by the trial judge. Because the consent judgment expressly imposed upon Ms. Katner the obligation of “handling] the insurance aspects of assuring payment,” we find that establishing deficiencies in the evidence on this | appoint was under her control. She was in the best position to contradict Mr. Katner’s evidence by showing either payment by her or some other disposition. Accordingly, we find no merit to this contention.
 

 Therefore, we conclude that Mr. Katner advanced the total amount of $13,801 to Ms. Katner for which he is entitled to claim a credit toward the outstanding balance owed to her in the amount of $15,704. “The court shall divide the community assets and liabilities so that each spouse receives property of an equal net value.” La. R.S. 9:2801 A(4)(b). In order to equalize the distribution of assets, Mr. Katner must pay Ms. Katner the full sum of $1,903.
 

 DECREE
 

 Accordingly, we reverse that part of the trial court judgment which found Mr. Kat-ner’s payments to Ms. Katner after the termination of the community constitute
 
 *580
 
 advances for which he is entitled to a credit, and we find that the direct and indirect payments made by Mr. Katner were voluntary interim spousal support payments. Judgment is rendered herein in favor of Sri Katner and against David Katner in the full amount of $1,903.
 

 In all other respects, the judgment of the trial court is affirmed.
 

 AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
 

 [1]
 

 . This was the date on which the petition for divorce was filed. The divorce was granted on December 21, 2001.
 
 See
 
 La. C.C. arts. 159 and 2356, particularly Revision Comment c. Both the judgment and the amended judgments of the trial court state “June 19, 2001” as the date of the termination of the community.
 

 [2]
 

 . Both the judgment and the amended judgment ordered Sri Katner to remit the sum of $1,024 to David Katner.
 

 [3]
 

 . Ms. Katner proffered an appraisal close to the trial date valuing the home at that time at $415,000.
 
 See
 
 La. C.E. art. 103 A(2). This appraisal was rejected as irrelevant.
 
 See
 
 La. C.E. art. 402, which states in pertinent part: "Evidence which is not relevant is not admissible.”
 

 [4]
 

 . This hearing was never conducted, and the valuation was made during the partition trial.
 

 [5]
 

 . Even if the trial judge had erred in excluding the realtor’s appraisal from evidence, it would still have been within the trial judge's purview to reject the appraisal. "The rule that questions of credibility are for the trier of fact applies to the evaluation of expert testimony, unless the stated reasons of the expert are patently unsound.”
 
 Lasyone v. Kansas City Southern Railroad,
 
 00-2628, p. 13 (La.4/3/01), 786 So.2d 682, 693.
 
 See also Orrill v. Orrill,
 
 08-0400, p. 7 (La.App. 4 Cir. 2/4/09), 5 So.3d 279, 284; and
 
 Beaucoudray v. Walsh,
 
 07-0818, p. 13-14 (La.App. 4 Cir. 3/12/09), 9 So.3d 916, 924.
 

 [6]
 

 . The trial court’s judgment set this amount at $377,595. However, the trial court erroneously included the value of the Bank One IRA in the amount of $1,137 as a community asset. Mr. Katner stipulated at trial that the account was the separate property of Ms. Katner and formed no part of the community.
 

 [7]
 

 . The trial court's judgment made a typographical error and set the reimbursement amount at $4,250.
 
 See
 
 La. C.C.P. arts. 1951 and 2164.
 

 [8]
 

 . Ms. Katner relies upon the first circuit decision in
 
 Lobert v. Lobert,
 
 07-1527 (La.App. 1 Cir. 8/8/08), 2008 WL 3245560 **3-4 (unpubl.). That decision, however, is distinguishable because the trial judge, unlike in the case
 
 sub judice
 
 and even in Rogers, supra, totally rejected the husband’s unsubstantiated claim for reimbursement, which rejection was not manifestly erroneous.
 

 [9]
 

 .The precise amount of reimbursement which Ms. Katner concedes is $5,668.
 

 [10]
 

 . Ms. Katner did not file any pleading seeking relief under La. R.S. 9:374 C.
 

 [11]
 

 .Ms. Katner also claimed in her testimony
 
 *576
 
 that the gift was used to pay her student loans.
 

 [12]
 

 . With the prior consent of Ms. Katner, Mr. Katner paid $428 to store her belongings while she was incarcerated, and he paid $3,265 to satisfy her obligation to a child custody supervisor.
 

 [13]
 

 . The categories of payments constituting the $15,742 are Ms. Katner’s post-termination medical bills ($10,050), post-termination health insurance premiums ($1,211), and post-termination car insurance payments ($4,481).
 

 [14]
 

 .The article was amended in 2001. The 2001 amendments, shown in brackets, were minor.
 
 See
 
 Historical and Statutory Notes.
 

 [15]
 

 . He made two further direct payments after that date.
 

 [16]
 

 . The amount of direct payments during this period totals $7,808.
 

 [17]
 

 . The amount of indirect payments during these periods which constitute voluntary spousal support total $4,761. This includes $2,250 of the amounts on Exhibit # 15, $285 of the amounts on Exhibit 16 (which were revised at trial to reduce Ms. Katner’s share to one-fourth of the totals), and one-half of the GEICO payments dated June 30, 2001 through April 18, 2002 on Exhibit #17 or $2,226.