986 So.2d 894 (2008)
Marsha Jo STATHAM, Plaintiff-Appellant
v.
Harry Rufus STATHAM, Defendant-Appellee.
No. 43,324-CA.
Court of Appeal of Louisiana, Second Circuit.
June 11, 2008.
*896 Richard L. Fewell, Jr., for Plaintiff-Appellant.
Robert S. Tew, Monroe, for Defendant-Appellee.
Before BROWN, WILLIAMS and GASKINS, JJ.
GASKINS, J.
In this community property partition, the wife appeals from a judgment classifying property and assessing value. In particular, she objects to the trial court's classification of a diamond ring she received as community property. Additionally, she complains of the trial court's classification of post-termination distributions to the husband from the community business as his separate property, and the court's assessment of a value of $34,000 to the community business. We affirm the trial court judgment.

FACTS
The parties, Marsha Jo "Jody" Statham and Harry Rufus "Butch" Statham were married in 1970. They divorced in 2005. The community terminated on February 16, 2005, the date of the filing of the divorce petition.
A June 2007 hearing officer conference report made findings and recommendations *897 as to the partition of the community property. Butch filed an objection to the hearing officer's conclusion that a ring valued at about $17,000 and acquired during the marriage was very probably a birthday present to Jody and thus her separate property. Jody objected to several findings, including the hearing officer's acceptance of Butch's evidence that the community business was valued at $33,000 and his denial of Jody's assertion that part of Butch's post-termination income should be classified as community property.
A bench trial on the community property partition was held on July 27, 2007. Six witnesses testified. In addition to the parties, Jody presented the testimony of Richard W. Guillot, a business valuation expert, and Gary L. Booth, a certified public accountant (CPA) who performed work for Butch's insurance brokerage company, P & S Benefits Consultants, Inc. (P & S). Butch presented the testimony of Albert Carlton Clark, III, a business valuation expert, and Troy Pardue, an insurance agent who was Butch's business partner for 11 years.
According to Mr. Guillot's analysis, the fair market value of P & S as of February 2005 was $310,766. When he compiled his report in June 2006, he based his opinions on fair market value, a willing buyer and a willing seller. However, Mr. Clark  who was hired two months before trial  estimated the value at $34,000 for purposes of the community property partition. In reaching this figure, he estimated that P & S had a total value of $220,008, but a total goodwill value of $207,094. He then assessed 90 percent of the total goodwill value of the company to personal goodwill, as opposed to enterprise goodwill.
Jody testified that a ring purchased for more than $15,000 was given to her as a birthday gift and thus was her separate property. According to her, it was purchased two days before her birthday in 2002. She testified that her husband had said they should get her a ring for her birthday when they were joking about their daughter-in-law's engagement ring being larger than hers.[1] She testified that she signed the check for the purchase when she picked the ring up at the jewelry store a few days after they picked it out. Jody admitted that the ring was bought at about the same time they received money back from a cancer policy after Butch's bout with cancer. Butch testified that after they received money back from a cancer policy claim, they each got an expensive item  she got the ring and he got a four-wheeler.[2] He identified a deposit in their joint checking account made on Jody's birthday in 2002 as the insurance proceeds. According to him, his birthday gift to Jody in 2002 was a portrait of their son which was placed on a billboard.
On August 28, 2007, the trial court issued a written ruling. Among the court's determinations was a finding that the ring was community property. It concluded that it was not convinced that the ring was a gift. It found the testimony of Jody and Butch about their "perceptions" as to the ring equally persuasive. Since the ring was presumed to be community and Jody failed to carry her burden of proof on this issue, the court classified the ring as community.
*898 As to the value assessment of P & S, the court found the testimony of Mr. Clark more convincing than that of Mr. Guillot. Specifically, it concluded that the basis of Mr. Clark's opinion was more valid since Mr. Guillot's report used 2005 data and failed to assess goodwill. Thus, the court assigned a value of $34,000 to the company. On the issue of post-termination distributions from P & S to Butch, the court found that this income resulted from effort, skill and industry exercised by Butch after the termination of the community; thus, it was classified as his separate property.
On October 22, 2007, the trial court signed a judgment in conformity with its ruling.
Jody appealed.

CLASSIFICATION OF RING
Jody argues that the trial court erred when it disregarded the hearing officer's finding that, based upon the circumstances and timing of the purchase, it was "very probable" that the ring was intended as a birthday gift to her which should be classified as her separate property. On the other hand, Butch emphasizes the evidence he presented that his birthday gift to Jody in 2002 was a portrait of their son and the display of the portrait on a billboard; this included an invoice from the photographer and corroboration of his own testimony by his friend and former business partner, Mr. Pardue.
Things in the possession of a spouse during the existence of a regime of community of acquets and gains are presumed to be community, but either spouse may prove that they are separate property. La. C.C. art. 2340. The spouse seeking to rebut the presumption bears the burden of proving that the property is separate in nature. Ross v. Ross, 2002-2984 (La.10/21/03), 857 So.2d 384.
A trial court's findings regarding the nature of the property as community or separate is a factual determination subject to manifest error review. Ross, supra.
An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong, and where two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Cole v. Department of Public Safety & Corrections, 2001-2123 (La.9/4/02), 825 So.2d 1134; Stobart v. State through Department of Transportation and Development, 617 So.2d 880 (La.1993). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Cole, supra; Rosell v. ESCO, 549 So.2d 840 (La.1989). To reverse a fact finder's determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. Stobart, supra.
Where the fact finder's conclusions are based on determinations regarding credibility of the witnesses, the manifest error standard demands great deference to the trier of fact, because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Rosell, supra.
Jody and Butch diametrically contradicted each other on the subject of the ring. She testified unequivocally that the ring was a birthday gift from Butch to her in *899 2002. He was equally clear that his birthday gift to her that year was a portrait of their son and its placement on a billboard. He categorically testified that each of them made an expensive purchase after receiving money back on a cancer policy  she bought the disputed ring and he bought a four wheeler, which was included in the community property partition. Each spouse offered testimony of family and/or friends in support of his or her version. The documentation showed that Jody signed the check paying for the ring and that the cancer policy funds were deposited on Jody's birthday.
The trial court found both sides equally credible. As a result, it concluded that Jody had failed to carry her burden of rebutting the presumption that the ring was community property. On the evidence in this record and in light of the credibility determinations made by the trial court, we are unable to find that it was manifestly erroneous or clearly wrong in its ruling.

VALUATION OF COMPANY
As to the valuation of P & S, Jody contends that the trial court erred in concluding that Mr. Clark's opinion was more valid because it used more recent financial information; according to Jody, the evidence shows that P & S's cash flow has remained consistent through 2007. She claims that the 90 percent figure used for personal goodwill by Mr. Clark cannot be sustained and it ignores the fact that much of the company's stability came from selling policies from major companies like Blue Cross/Blue Shield.
Butch argues that his expert, Mr. Clark, properly applied La. R.S. 9:2801.2, which provides for the exclusion of "goodwill attributable to any personal quality of the spouse awarded the business" from the business' valuation. On the other hand, he asserts that Jody's expert failed to apply the statute in his analysis. Butch also maintains that the testimony of his former business partner, Mr. Pardue, corroborated his own testimony about the nature of the business and his personal relationship with his clients.
La. R.S. 9:2801.2 states:
In a proceeding to partition the community, the court may include, in the valuation of any community-owned corporate, commercial, or professional business, the goodwill of the business. However, that portion of the goodwill attributable to any personal quality of the spouse awarded the business shall not be included in the valuation of a business.
Where one spouse holds a professional degree or license and the goodwill results solely from that professional's personal relationship with clients, that goodwill is not included in the community. Clemons v. Clemons, 42,129 (La.App. 2d Cir.5/9/07), 960 So.2d 1068, writ denied, XXXX-XXXX (La.10/26/07), 966 So.2d 583.
The rule that questions of credibility are for the trier of fact applies to the evaluation of expert testimony, unless the stated reasons of the expert are patently unsound. Credibility determinations, including the evaluation of and resolution of conflicts in expert testimony, are factual issues to be resolved by the trier of fact, which should not be disturbed on appeal in the absence of manifest error. Hanks v. Entergy Corporation, 2006-477 (La.12/18/06), 944 So.2d 564.
The two experts used similar methodologies to value P & S.[3] However, they differed substantially on the methods used to *900 determine goodwill. To make this assessment, Mr. Clark began with his fair market calculation of $220,008 and subtracted $12,914 for business assets (like accounts receivable, furniture, and fixtures). Mr. Clark found the remaining value of $207,094 was goodwill. In determining the percentage of goodwill attributable to personal goodwill and to enterprise goodwill, Mr. Clark considered Butch's personality, his relationship with his customers, the amount of his business coming from referrals, the loyalty of his customers who would follow him regardless of his company name, and the good service Butch provides to his customers. Mr. Clark assigned little value to the product because other insurance agents sell the same group health lines. Pursuant to La. R.S. 9:2801.2, for purposes of the community property partition, Mr. Clark concluded that 90 percent of the value was attributable to Butch's personal attributes and only 10 percent to the enterprise or business itself. Thus, he found that the company's value, for partition purposes, was $34,000.
Mr. Guillot testified that Mr. Clark's assignment of 90 percent to personal goodwill was unreasonable and that any methodology to assign personal goodwill was, at best, subjective. His analysis does not appear to assess goodwill under La. R.S. 9:2801.2. Instead, to compensate for goodwill, he merely increased the salary for Butch in the analysis by which he determined the value of P & S.
Our review of the testimony of the experts reveals that the trial court made a credibility determination in favor of Butch's expert, Mr. Clark. As we do not find any indication that Mr. Clark's reasons are "patently unsound," we are obliged to defer to the trier of fact. The trial court's findings on this issue are not manifestly erroneous or clearly wrong. Therefore, the trial court did not err in accepting Mr. Clark's valuation of the company.

POST-TERMINATION DISTRIBUTIONS
As to the trial court's determination that the post-termination distributions to Butch were his separate property, Jody argues that the trial court erred in applying Boone v. Boone, 39,544 (La.App. 2d Cir.4/6/05), 899 So.2d 823, and ignoring Lanza v. Lanza, XXXX-XXXX (La.3/2/05), 898 So.2d 280, which she claims would require that part of the post-termination distributions (over and above Butch's salary) be classified as community.
In support of his position that the trial court properly classified the distributions as his separate property under Boone v. Boone, supra, Butch cites the testimony of his CPA, Mr. Booth, that the distributions he received after the termination of the community were only salary resulting from his effort, skill and industry each year.
In pertinent part, La. C.C. art. 2338 states that community property comprises "property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse." Wages earned by a spouse for work performed after the community terminated are separate property. Boone, supra. As previously noted, a trial court's findings regarding the nature of the property as community or separate is a factual determination subject to manifest error review. Ross, supra.
Since the distributions at issue came into Butch's possession after the termination of community, they do not carry the presumption of community. Lanza, supra; Boone, supra. The burden thus fell to Jody to prove the distributions were community assets.
*901 According to the testimony, only about 20 percent of Butch's policies renew automatically. Because of the type of insurance he sells, Butch testified that he has to "shop" or re-offer policies to at least 80 percent of his customers every year. He also regularly contacts his customers and engages in such activities as taking them to lunch or hunting. Jody failed to show specifically what income she felt entitled to receive as a result of automatic renewals.
The trial court found that the post-termination distributions were Butch's separate property because this income resulted from his effort, skill and industry exercised after the termination of the community. Given Jody's failure to carry her burden of proof on this issue, we find no manifest error in this ruling.

CONCLUSION
The judgment of the trial court is affirmed. Costs of this appeal are assessed to the appellant.
AFFIRMED.
NOTES
[1] The parties stipulated that Jody's mother and two of her friends would testify that she showed them the ring around the time of her birthday and told them that it was a birthday gift from Butch.
[2] A Honda four-wheeler valued at $3,000 is among the community assets allocated to Butch.
[3] Like the trial court, we note that Mr. Clark used more current data. La. R.S. 9:2801(A)(4)(a) specifies that in partitioning the community, the "court shall value the assets as of the time of trial on the merits."