PAUL A. BONIN, Judge.
| ,Darren Schmolke, the independent administrator of this succession, amended the sworn descriptive list he had previously filed in these proceedings. Darren[1] is the surviving spouse in community of the decedent, Tara Burst Schmolke, and the natural tutor of their minor child. The decedent died intestate. Her parents, Yolande and Bernard Burst, under the authority of a consent judgment, filed a motion to traverse the amended sworn descriptive list.
The principal issues before the trial court arise from the proper classification of assets and liabilities as community or separate property and the ensuing reimbursement claims which would result therefrom. After an evidentiary hearing, the trial court ordered further amendment by Darren of the descriptive list and rendered a judgment. The Bursts obtained an order designating the judgment as final and appealable, and timely appealed the judgment on the traversal. Darren answered the appeal of that judgment, but he did not appeal the consent judgment which he had previously entered into with the Bursts.
UAt the outset, we find that the trial court correctly decided that the Bursts did have standing to traverse the descriptive list. We too conclude that Darren is bound by the express terms of the consent judgment he entered with the Bursts and more fully explain our decision in Part II, post.
With respect to the classification and reimbursement issues, having reviewed the judgment on the traversal, we for the most part find that the trial judge was not clearly wrong in her determinations. We find, however, that the trial judge was clearly wrong in failing to re-classify the decedent’s $18,000 engagement ring from community to separate property, in the treatment of the proceeds of a $125,000 loan from the Hibernia Bank, and in allowing Darren’s $78,000 reimbursement claim.[2] We explain our decision on each issue raised by the parties in more details in Parts III through VII, post.
We accordingly amend the judgment on the traversal and affirm it as amended. We also remand with instructions to the trial judge to inquire into the lack of tutorship proceedings, especially the lack of an appointment of an undertutor and, if necessary, take necessary remedial measures.
I
Tara and Darren were married on April 21, 2003. They had no matrimonial agreement modifying the legal regime of the community of acquets and gains. See [3La. *919 Civil Code arts. 2327 and 2328. Shortly before her marriage, Tara acquired immovable property on Catina Street in New Orleans. Darren was the sole shareholder of a corporation known as Green Acres Towing, Inc. located on West Napoleon Avenue in Metairie, Louisiana. It is undisputed that Tara’s Catina property and Darren’s business were each one’s exclusive separate property, having been acquired prior to the establishment of the community property regime. See La. Civil Code art. 2341. These two separate assets are implicated in the contentions made by the parties to the present appeal.
During their marriage, the Schmolkes purchased immovable property on West Napoleon Avenue, which is the location at which Darren operated his auto repair business; it is undisputed that this property was community property. See La. Civil Code art. 2338. The acquisition of this property figures prominently in this dispute.
The Schmolkes were the parents of one child, a minor, who is Tara’s sole heir as well as a forced heir. See La. Civil Code arts. 888 and 1493 A. Tara died intestate on September 5, 2005, and the community property regime terminated on that date. See La. Civil Code art. 2356. Darren became entitled to the usufruct of his late wife’s share of the community property which devolved to their minor son until his remarriage on May 5, 2009. See La. Civil Code art. 890.
And upon Tara’s death the tutorship of the minor child belonged of right to Darren as a tutorship by nature. See La. Civil Code art. 250. As surviving spouse in community and natural tutor of the decedent’s sole heir, Darren obtained 14appointment as the independent administrator of Tara’s succession. See La. C.C.P. arts. 3396.5 and 3396.9.
Apparently dissatisfied with Darren’s handling of their daughter’s succession and concerned for the financial welfare of their grandson, the Bursts sought the appointment of a separate tutor of the minor’s property. See La. C.C.P. art. 4069. During the contradictory hearing on their petition, Darren and the Bursts entered into a consent judgment which stipulated that the Bursts were interested persons for the purposes compelling the filing of a sworn descriptive list and of traversing any such list filed.
Once the Bursts filed their traversal of his amended sworn descriptive list, Darren reversed course and argued that they had no standing. We now turn in the following Part to a fuller consideration of that contention and why we reject it.
II
Darren excepted to the Bursts’ pleading which sought the appointment of a separate tutor and undertutor of the minor child’s property. The basis of Darren’s exception was that the Bursts lacked “standing” to proceed in the succession; they were not heirs of their late daughter and they were not the tutors of the sole heir. The Bursts made several allegations about Darren’s suitability to attend to his son’s financial affairs. But then, as we stated, during the hearing on the matter Darren and the Bursts entered into a consent judgment. See La. C.C.P. art. 1916 B.
Among the matters covered in the consent judgment were the provision of a deadline for Darren to file a sworn descriptive list of assets and liabilities from | sTara’s date of death until the date of the judgment and another provision in which Darren “stipulates that [the Bursts] are both interested parties with regard to this Succession and that they have full rights to traverse the Accounting and/or Sworn De *920 scriptive List and to take any and all such actions as may be taken by an interested party with reference to this Succession.”[3] Also, the consent judgment provides, seemingly in emphasis, that Darren “stipulates that he will not contest their capacity to do so.” But that is precisely what he is now doing.
“When the facts alleged in the petition provide a remedy to someone, but the plaintiff who seeks the relief for himself is not the person in whose favor the law extends the remedy, the petitioner lacks standing.” In re Melancon, 05-1702, p. 10 (La.7/10/06), 935 So.2d 661, 668. “Any interested person may traverse the descriptive list at any time, on contradictory motion served on the person filing it.” La. C.C.P. art. 3137. Thus, an interested person is someone to whom the law extends a remedy to traverse a descriptive list and who would have standing.
Darren relies on a decision by the fifth circuit which found that grandparents, who are not heirs of and not the tutors of the minor heirs of the decedent, lack standing to traverse the descriptive list in their deceased child’s succession. See Succession of LeRuth, 561 So.2d 183 (La.App. 5th Cir.1990). The LeRuth court opined that “interested parties contemplate someone whose rights are being affected and therefore have standing to protect their own property |r,rights.” Id. at 184. The court explained that Article 3137 “does not envision, however well intended, permitting the grandparents of minor children to inject themselves into the administration of the succession on the theory that they are protecting the interest of the minors.” Id.
Because of the consent judgment, however, LeRuth is easily distinguished from the situation here. “Louisiana law gives consent judgments the authority of law: A consent judgment is a determination of the rights of the parties and acquires the authority of the thing adjudged.’ Thibodeaux v. Thibodeaux, 511 So.2d 102, 104-105 (La.App. 3rd Cir.1987).” Katner v. Katner, 09-0974, p. 4 (La.App. 4 Cir. 12/23/09), 28 So.3d 566, 570. Oftentimes a consent judgment is a means of effecting or enforcing a compromise. See DeSoto v. DeSoto, 694 So.2d 1043, 1045-1046 (La.App. 5 Cir. 4/29/97). “A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship.” La. Civil Code art. 3071. Like any other contract, a compromise has “the effect of law for the parties.” La. Civil Code art.1983. And like any other contract, a compromise “must be performed in good faith.” Id.
By agreeing to the terms of the compromise which resulted in the consent judgment, Darren cannot renege on his explicit stipulation that the Bursts were interested persons for the purpose of traversing the descriptive list he filed. The compromise and the consent judgment govern. See Speyrer v. Gray Ins. Co., 11-1154, pp. 4-5 (La.App. 3 Cir. 2/1/12), 83 So.3d 1231, 1234. That the Bursts are | ./interested persons for the purpose of Article 3137 was finally settled by the rendition of the consent judgment, and we will not reconsider its provisions.[4] Like the trial judge, *921 we reject Darren’s contention on this point.
Ill
In this Part we address the Bursts’ claims that the trial court was wrong in its classification of the funds in a checking account and of the decedent’s jewelry.
A
Darren listed a checking account at a bank. Although he reported that the balance on the date of Tara’s death was $55,000, he asserted in his notes that $49,000 of that amount was his separate property. The balance of $6,000 was community, according to him, and thus only $8,000 was an asset of the succession. Darren testified that the $49,000 were the proceeds of the sale of property inherited from his parents and sold to his sister. He produced an act of sale dated three months before Tara’s date of death in which he and his brother received a cash payment of $136,000. He testified that his one-half of the proceeds amounted to about $68,000, which was deposited into the couple’s community checking account. He also testified that the checking account seldom exceeded deposits totaling more than $6,000. The Bursts did not introduce any documentary or testimonial evidence challenging Darren’s explanation of the source of the funds or produce any evidence which contradicted Darren’s version.
|s“Things in the possession of a spouse during the existence of a regime of community of acquets and gains are presumed to be community, but either spouse may prove that they are separate.” La. Civil Code art. 2340 (emphasis added). The burden of proof, which in this case is on Darren who claims that the $49,000 is his separate property, is by a preponderance of the evidence. See Talbot v. Talbot, 03-0814, p. 12 (La.12/12/03), 864 So.2d 590, 600 (“As a matter of public policy and in the interest of fairness, we find that the community presumption contained in Article 2340 is rebuttable by either spouse upon a showing by a preponderance of the evidence the separate nature of property brought into the community.”)
Because the Bursts offered no evidence to contradict Darren’s testimony, and his testimony is not contrary to documentary evidence, and they do not suggest that the community had sufficient funds on hand, we cannot say that the trial judge was clearly wrong in finding that Darren carried his burden of proof in showing that the $49,000 were the proceeds of the sale of his separate property. See Katner, 09-974, pp. 10-11, 28 So.3d at 574.
B
Darren reported on the descriptive list jewelry in the gross amount of $50,000, all of which he classified as community. He testified that he repackaged about $30,000 of the jewelry and gifted it to his late wife’s relatives. He admitted, however, that he purchased his late wife’s engagement ring at a local jeweler before their marriage and then subsequent to her death traded-in her engagement 19ring and received a credit of $18,000 toward the purchase of jewelry for his new wife.
With respect to the engagement ring, we find, based upon Darren’s own testimony, that the ring was a pre-marriage gift from him to Tara and was surely her separate property because it was property acquired by her prior to the establishment of the community. See La. Civil Code art. 2341. Cf. Statham v. Statham, 43,324, pp. 2-3 (La.App. 2 Cir. 6/11/08), 986 So.2d 894, 897. Thus, we conclude both that the Bursts carried their burden to prove that the engagement ring was separate property, and that the trial judge was clearly wrong in not so finding.
*922 With respect to the remaining jewelry, we agree with Darren that the Bursts failed to overcome Article 2340’s presumption of community. Therefore, the descriptive list must be further amended to show jewelry as a community asset with a gross value of $32,000 and the succession’s interest valued at $16,000 and to show the engagement ring as a separate asset valued at $18,000.
Ill
In this Part we address the proper classification of the $125,000 loan proceeds from the Hibernia Bank and the consequences of the proper classification to the Bursts’ claims for reimbursement due their late daughter’s succession.
A
The decedent obtained a $125,000 line of credit from the bank which was secured by a second mortgage on the Cati-na Street property, which was her | ^separate property. (Darren listed this debt as the separate debt of his late wife.) The decedent drew down the entire proceeds of the line of credit on two different days. On the first day, Darren admits to expending $52,540[5] of the loan proceeds to pay separate debts incurred by him before the marriage and depositing an additional $22,460 into his auto repair business’ corporate account. On the second day, the Schmolkes applied $50,000 to the purchase of the West Napoleon Avenue property, which became community property.
Later, when the Catina Street property was sold after Tara’s death, the bank was repaid out of the proceeds of the sale of her separate property.
“An obligation incurred by a spouse during the existence of a community property regime for the common interest of the spouses or for the interest of the other spouse is a community obligation.” La. Civil Code art. 2360. An obligation incurred by a spouse during the existence of the community regime may be separate, however, when it is incurred “not for the common interest of the spouses or for the interest of the other spouse.” La. Civil Code art. 2363. Because the obligation incurred by the decedent on the first day was clearly for the interest of the other spouse, Darren, in paying his separate debts and in enriching his separate business, and the one incurred on the second day was clearly for the common interest of the spouses in acquiring community property, the entire $125,000 loan is a community obligation.
^jjjBecause the decedent’s separate property was used to satisfy a community obligation, her succession “is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used.” La. Civil Code art. 2365. Thus, the descriptive list must be amended to (1) re-classify the loan obligation as a community obligation, and, because the decedent’s separate property was used to repay the community obligation, (2) itemize the reimbursement the succession is due from Darren in the amount of $62,500.[6]
B
There is an additional consequence to the re-classification of the $125,000 loan from separate to community. The pro *923 ceeds of the loan are properly classified as community. Because $75,000 of the proceeds was used to pay Darren’s separate debts, Darren is obliged to reimburse an additional $87,500 to the succession, which sum is of course one-half of the amount used. “If community property has been used during the existence of the community property regime ... to satisfy a separate obligation of a spouse, the other spouse is entitled to reimbursement for one-half of the amount or value that the property had at the time is was used.” La. Civil Code art. 2364.
IV
We turn in this Part to examine the Bursts’ argument that the trial judge was clearly wrong in recognizing Darren’s claim for reimbursement of his separate h ¿funds for the acquisition of the West Napoleon Avenue community property; he listed his claim at $73,000.
He supplied no documentation to support a finding that he separately possessed such a sum of money at that time. The property was purchased in March 2004 and Darren did not sell his interest in the property he inherited until June 2005. He does not specifically identify any other source of such a sum. And just three months earlier, in late December 2003, he used money from Tara’s line of credit to pay $52,540 on his pre-marriage debts and to deposit an additional $22,460 in his business account.
If he had somehow acquired separate funds of that amount within the intervening three months, he surely should have been able to identify them. But he did not, and the record is void of anything by way of Darren’s explanation of the source of the funds other than to point to his business account, which is the same account into which -the proceeds of Tara’s line of credit had been deposited. Thus, simply because the $73,000 was found in his separate account, it cannot be reasonably inferred that the funds were in fact separate. We find that the trial judge was clearly wrong in concluding that Darren carried his burden to overcome the presumption that the funds were community. See La. Civil Code art. 2340. Accordingly, it is necessary that his - reimbursement claim for $73,000 be deleted from the descriptive list.[7]
JjV
We now turn to Darren’s answer to the Bursts’ appeal, by which he objects to the trial judge’s disallowing his reimbursement claims relative to Tara’s Catina Street property and to the community’s West Napoleon Avenue property.
A
Darren’s $90,000 reimbursement claim related to Tara’s Catina Street property has several aspects. He highlights that the property was purchased by Tara less than two months before their marriage, and he claims that he contributed $50,000 of his funds to the down payment, which funds he received from the sale of a property he had owned and sold in anticipation of marriage. He then claims reimbursement for his labor and contracting services on Tara’s property, post-marriage and then post-death. He next claims that community funds were used to pay monthly installments on the mortgage from the date of their marriage until the date of Tara’s death and that his funds were used to pay monthly installments on the mortgage from Tara’s death until the sale of the property in 2008. The trial judge rejected all of these reimbursement claims.
*924 To justify his reimbursement claim for his $50,000 contribution to the down payment, Darren relies upon La. Civil Code art. 2367.1. His reliance is misplaced. Reimbursement under that article is limited to those circumstances when the property of one spouse “has been used during the existence of the community property regime” for the acquisition of the other spouse’s property. La. Civil Code art. 2367.1. Because Darren and Tara were not yet married, the community 114property regime had not yet come into existence. Thus, the trial judge as a matter of law correctly rejected this portion of the claim.
With respect to Darren’s claim to compensate him for his labor and contracting services, he was entitled to make such a claim for such services rendered during the existence of the community property regime if Tara’s property had increased in value as a result of the uncompensated labor or industry of Darren. See La. Civil Code art. 2368. He has not informed us, however, of the legal basis for compensating such services after the termination of the community regime upon Tara’s death. But, in any event, the trial judge found that any labor or contracting services actually rendered by Darren were inconsequential; they extended to putting up guardrails and grading the yard. We have examined the record and conclude that the trial judge’s factual finding about the worth of any services is not clearly wrong and is reasonable.
With respect to those portions of the reimbursement claim for monthly mortgage payments by the community during its existence and thereafter by Darren until the sale of the decedent’s property, the trial judge rejected both portions because the family resided in the home before Tara’s death and after her death Darren and the child continued to reside there. She determined that these payments were in lieu of rental payments or of the rental value for the use and occupancy of the home. We agree.
[ 1BThus, all Darren’s claims for reimbursement related to the Catina Street property are properly deleted.[8]
B
Darren claims reimbursement due him for his expenditure of his separate funds to pay the monthly installments on the mortgage for the community-owned West Napoleon Avenue property. He argues that his separate auto-repair business paid the $3,700 monthly installment, a community obligation, from April 2004 until December 2008 for a total of $99,900. Here again the trial judge reasoned that his separate business benefited from the use and occupancy of the community property, but he did not credit any amount to the community from that benefit. In effect she concluded that the monthly expenditures were in lieu of rent. Again, we agree. Thus, Darren’s claim for reimbursement related to the West Napoleon Avenue property is properly deleted.[9]
VI
In this Part we return to a consideration of the Bursts’ complaint about two incidental matters concerning the judgment. Their first complaint concerns the refusal of the trial judge to disallow Darren’s claim for an estimated administrator’s fee and for the estimated fees of the attorneys. The second concerns the failure to render a money judgment against Darren for his indebtedness to the succession and thereby protect the minor child’s financial interest *925 in his late mother’s succession. We address each of these complaints, but |1fiwe first point out that the Bursts have not specified as error the trial court’s refusal to remove Darren as independent administrator or to restrict his independent administration of the succession beyond the injunctive relief granted in the consent judgment (see n. 3, ante). See La. C.C.P. art. 3396.20.[10]
A
An administrator of a succession is allowed a “reasonable amount” as a fee for his services. La. C.C.P. art. 3351. The fee may be set by agreement of the administrator with the surviving spouse and all competent heirs. Id. In the absence of such an agreement the administrator “shall be allowed a sum equal to two and one-half percent of the amount of the inventory as compensation for his services in administering the succession.” Id.
The Bursts argue that the trial judge should have denied any fee to Darren because of, what they characterize as, Darren’s intentional maladministration of the succession, which exceeds even gross negligence. The Bursts do not dispute, however, that the claimed fee is less than the amount statutorily authorized in the absence of an agreement.
Where a succession representative is guilty of gross negligence in handling of the succession, he is not entitled to a fee. See Succession of Vazquez, 07-0816, p. 7 (La.App. 4 Cir. 1/16/08), 976 So.2d 209, 215 (and cases cited therein). In Vazquez, however, the trial court removed the executor and denied an executor’s fee to him. Here, the trial judge did not find “good cause” for the removal of Darren and, most importantly for our purposes, the Bursts have not sought review of that determination. Thus, in the absence of Darren’s removal as administrator, we cannot say that the recognition of his entitlement to an administrator’s fee less than that statutorily authorized is clearly wrong as a matter of fact or even simply wrong as a matter of law.[11]
The Bursts also complain about the estimated fees of the succession’s attorneys, which is $7,500. The Bursts have only made conclusory statements that the fees were not incurred in the course of defending the succession’s interest. They have not pointed us to any specific matter in the record for which attorneys’ fees were incurred which did not qualify as rendering service to the succession nor have they explained how such a fee in the aggregate is excessive when considering the contentious issues they themselves have urged to the court. There is no mention in the *926 transcript of the fees, and the succession’s attorneys were not examined about their billing. Because the trial judge, however, had the benefit of personally observing the legal work performed by the succession’s attorneys, we defer to her evaluation that the fees charged to date is for work performed in the interest of and for the benefit of the succession. See, e.g., Westcott v. Westcott, 08-1339, pp. 4-5 (La.App. 4 Cir. 4/17/09), 11 So.3d 45, 50 (noting, “a trial judge is permitted to call upon his own experience and expertise in determining the amount of time and effort that a lawyer has put into the preparation of a case.”)
B
The Bursts also argue that the trial judge erred in failing to render a money judgment against Darren in order to protect the financial interests of his minor child, their grandchild. They also press for the judgment to include judicial interest.
Importantly, the Bursts only raised this issue for the first time in a motion for new trial. The motion to traverse Darren’s amended sworn descriptive list did not seek such relief and no petition for a money judgment has been filed. And the Bursts have not explained upon what legal authority such a judgment could be rendered at this stage of the succession proceedings.
We note that Darren cannot be discharged as the independent administrator until he files a final account with the court. See La. C.C.P. art. 3396.19. At that time, he will have to show that he has enforced all obligations in favor of the succession. See La. C.C.P. art. 3211. We do not assume at this point in time that Darren will not reimburse the succession all sums that he has been judicially determined to owe. And not until the administration is concluded and he seeks discharge can that determination be made.
Therefore, we cannot grant at this time the relief which the Bursts seek.
|inIn the meantime, however, there are other means to protect the minor’s interest. During oral argument here, counsel for the parties informed us that Darren has never sought confirmation as the child’s natural tutor by opening tutorship proceedings.[12] See La. C.C.P. arts. 4031 et seq.
As the natural tutor, Darren is accountable. See La. Civil Code art. 249. In order to qualify as the natural tutor, Darren must take an oath to discharge faithfully the duties of his office as well as “cause a legal mortgage in favor of the minor be inscribed, or furnish security, in the manner provided by law.” La. C.C.P. art. 4061. See also La. C.C.P. arts. 4134 and 4135.
In addition to the tutor’s responsibilities, a tutorship proceeding also includes the appointment of a “responsible person” as the undertutor. La. C.C.P. art. 4201. The undertutor .“shall act for the minor whenever the minor’s interest is opposed to that of the tutor.” La. C.C.P. art. 4202 (emphasis added); see also La. Civil Code art. 278 (“The undertutor who fails or neglects to cause to be inscribed in the manner required by law, the evidence of the minor’s legal mortgage against his tutor, shall be liable for all the damages which the minor may sustain in consequence of such failure or neglect.”) The undertutor’s role is that of a watchdog. See Green v. City of Shreveport, 39,066, p. 4 (La.App. 2 Cir. 10/27/04), 888 So.2d 314, 317 (noting that *927 the duty of an undertutor to the minor is “to exercise a constant supervision or watchdog role over the acts of the tutor”), 1 gncited with approval in In re Helm, 11-0500, p. 6 (La.App. 4 Cir. 11/2/11), 84 So.3d 601, 605.
Thus, we conclude that the most appropriate means for protecting the interests of the minor child at this time is by compliance with the law respecting tutorship proceedings.
REMAND INSTRUCTIONS
On remand, we direct that the district judge inquire into this matter and, if no tutorship proceeding has been commenced as represented to us, she shall require that Darren qualify for the office of natural tutor as provided by law. See La. Civil Code art. 248. Because the record suggests that the minor is no longer domiciled in Louisiana, the tutorship proceedings shall be filed in accord with La. C.C.P. art. 4032 or in these proceedings. Moreover, the district judge shall insure that there will have been appointed a responsible person as undertutor for the minor.
DECREE
The trial court judgment dated April 27, 2012, is amended in the following particulars: (1) the decedent’s one-half interest in the community’s jewelry is reduced from $25,000 to $16,000; (2) the value of decedent’s engagement ring, which was her separate property, is $18,000; (3) the $125,000 loan from Hibernia Bank is to be listed as a community obligation; (4) Darren Schmolke is obliged to reimburse the succession his one-half share of that amount, or $62,500; (5) Darren Schmolke is obliged to reimburse the succession one-half of the community funds expended on his separate debts, or $37,500, and (6) Darren Schmolke’s claim for 1 ^reimbursement in the amount of $73,000 is deleted from the descriptive list. In all remaining matters, the judgment is affirmed and as amended affirmed. And the matter is remanded to the district court with instructions.
AMENDED AND AFFIRMED AS AMENDED; REMANDED

. Just as the parties did in briefs, we are using the Schmolkes’ first names for ease of reference.

. In addition to a detailed judgment, the trial judge issued separate written reasons. The judgment was silent as to some of the issues raised on appeal (as were the trial judge’s reasons). “Silence in the judgment one this claim constitutes rejection of the claim. Louisiana law has held that an absence of written adjudication of a litigated issue is construed to mean that there was no award under that claim, and it is rejected.” Katner v. Katner, 09-0974, p. 13 (La.App. 4 Cir. 12/23/09), 28 So.3d 566, 576. See also Sewell v. Argonaut Southwest Ins. Co., 362 So.2d 758, 760 (La.1978), and R.G. Claitor's Realty v. Juban, 391 So.2d 394, 398 (La.1980).

. Other covered matters included Darren's obligation to obtain the release of the West Napoleon Avenue property as security for an appeal in which he was personally cast in judgment and an injunction against Darren alienating or encumbering property “that currently belongs to or formerly belonged to the Succession of Tara Elizabeth Schmolke.”

. Darren did not appeal the consent judgment, and any challenge to it is not covered by his answer to the Bursts' appeal. See La. C.C.P. art. 2133 A.

. Darren testified that the funds were used to satisfy an outstanding balance owed to First American bank in connection with the acquisition of his separate business.

. A spouse’s liability for reimbursement under these circumstances may be limited, however, “to the value of his share of all community property after deduction of all community obligations.” La. Civil Code art. 2365.

. This is the entry V(D)(1) on the amended descriptive list filed on October 28, 2011.

. This is the entry V(D)(2) on the amended descriptive list filed on October 28, 2011.

. This is the entry V(D)(3) on the amended descriptive list filed on October 28, 2011.

. La. C.C.P. art. 3396.20 provides:
The court on motion of any interested person, after contradictory hearing, may remove an independent administrator for any of the reasons provided in Book VI for which a succession representative may be removed. In addition, the court on motion of any interested person, after a contradictory hearing, may for good cause order that the letters of independent administration be withdrawn and that the succession thereafter be administered under the procedures set forth elsewhere in Book VI, other than those contained in this Chapter.

. Of course, Darren "has no absolute right to the [administrator's] fee provided for in La. C.C.P. art. 3351 until he has completed the administration of the succession and has filed his final account.” Vasquez, id. "The compensation of a succession representative shall be due upon the homologation of his final account. The court may allow an administrator or executor an advance upon his compensation at any time during the administration.” La. C.C.P. art. 3351. (We express no view whether Darren’s entitlement to the collection of his fee as a fiduciary is conditioned upon his first reimbursing the succession the amounts due.)

. A tutorship proceeding was not required for Darren to obtain appointment as independent administrator. See La. C.C.P. art. 3396.9.